**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-21300-CIV-MARTINEZ/AOR**

RAUL QUINTANA,

    Plaintiff,

v.

TRANSPORTATION AMERICA, INC.,
LIMOUSINES OF SOUTH
FLORIDA, INC., *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Defendants Transportation America, Inc. ("TAI") and Limousines of South Florida, Inc. ("LSF") (together, "Defendants") Motion to Compel Arbitration [D.E. 10].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 14]. The undersigned held a hearing on this matter on June 11, 2020 (hereafter, "Hearing") [D.E. 18]. For the reasons stated below, the undersigned respectfully recommends that Defendants' Motion to Compel Arbitration be GRANTED and that this case be STAYED.

**PROCEDURAL AND FACTUAL BACKGROUND**

On March 26, 2020, Plaintiff Raul Quintana ("Plaintiff") filed a two-count Complaint against Defendants and Frankcrum, alleging that they violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), by: failing to notify Plaintiff of his ability to seek leave pursuant to the FMLA for a serious medical condition (Count I); and interfering with the

---

[1] A third Defendant, Frankcrum 5, Inc. (hereafter, "Frankcrum"), has filed a Motion to Dismiss [D.E. 25].

rights afforded to him by the FMLA by terminating him (Count II).   See Compl. [D.E. 1].

On June 4, 2018, Plaintiff applied for the position of bus driver/operator.   See Mot. to Compel Arbitration [D.E. 10 at 2].   Plaintiff also signed an Alternative Dispute Resolution agreement ("Arbitration Agreement"), which provides in pertinent part:

> As a condition of your accepting employment or to continue employment with Limousines of South Florida and being eligible to receive increases in compensation, you agree to the following two important terms:
>
> (1) *As a condition of your employment, you agree to utilize the Company's employment alternative resolution processes to resolve legal claims against the Company - rather than go to court. You will submit any employment related legal claim except workers' compensation and unemployment compensation to final and binding neutral third party arbitration pursuant to the existing National Rules for the Resolution of Employment Disputes of the American Arbitration Association.* Except for a filing fee; the costs of the arbitration will be paid by the Company unless you want to share in the costs. You and the Company agree to be bound by the decision made by the external, neutral arbitrator.
>
> *The arbitrator chosen by you and the Company in accordance with the AAA Arbitration Rules and Procedures will be the sole and exclusive judge of the proper interpretation of any agreement between the parties as well as the rules and procedures of the arbitration process including arbitrability of claims.*  The arbitrator will have all of the power a judge hearing the dispute would have so that the significant differences between going to arbitration and going to court are that the process will be much faster, less expensive and there will be no jury.  Any arbitration, suit, action, or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, consolidated or similar basis.  If any party is required to file a lawsuit to compel arbitration pursuant to this Policy, or defend against a lawsuit filed in court contrary to this Policy's mandatory arbitration provision, such party, if successful, shall be entitled to recover his, her or its reasonable costs and attorneys' fees incurred in such an action, including costs and attorneys' fees incurred in any appeal.   This agreement does not limit your ability to complete any external administrative remedy (such as with the NLRB or EEOC).

Ex. A. to Mot. to Compel Arbitration [D.E. 10-1 at 14] (emphasis added).   Plaintiff alleges that he was employed as a driver from approximately July 16, 2018 until his termination on February 26, 2020.   See Compl. [D.E. 1 ¶¶ 17, 25].

On April 14, 2020, Defendants filed the Motion to Compel Arbitration arguing that, in

2

accordance with the terms of the Arbitration Agreement, Plaintiff's FMLA claims must be submitted to arbitration, and this case should be stayed pending arbitration. See Mot. to Compel Arbitration [D.E. 10].[2]

On April 28, 2020, Plaintiff filed his Response in Opposition to Defendants' Motion to Compel Arbitration and Request for Evidentiary Hearing (hereafter, "Response") [D.E. 11]. Therein, Plaintiff argues that arbitration should not be compelled because: (1) the parties did not enter into an agreement to arbitrate; (2) the Arbitration Agreement is unenforceable as unconscionable; and (3) Defendant TAI is not entitled to submit Plaintiff's FMLA claims against it to arbitration. See Resp. [D.E. 11].[3]

On April 30, 2020, Defendants filed their Reply in Support of the Motion to Compel Arbitration [D.E. 12]. On May 1 and June 18, 2020, Defendants filed a Notice and Second Notice of Supplemental Authority, respectively, in Support of the Motion to Compel Arbitration [D.E. 13, 24].

Having reviewed these submissions and having considered the arguments of counsel at the Hearing, the undersigned concludes that the Motion to Compel Arbitration should be granted.

## **LEGAL STANDARD**

"The Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1–16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements." Schoendorf v.

---

[2] Defendants also seek an award attorneys' fees and costs for filing the Motion to Compel Arbitration. Id. Such a request must be submitted separately in accordance with S.D. Fla. L.R. 7.3.

[3] Plaintiff argues that he is entitled to an evidentiary hearing on the question of whether he entered into a valid agreement to arbitrate. See Resp. [D.E. 11 at 10]. However, an evidentiary hearing is unnecessary because the issues described herein can be decided based on the evidence available in the record. See Garcia v. J&J, Inc., No. 19-CV-60728, 2019 WL 5862967, at *5 (S.D. Fla. 2019) ("Because the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution, there is no need for an evidentiary hearing."). Accordingly, Plaintiff's request for an evidentiary hearing is denied.

Toyota of Orlando, No. 08-CV-767, 2009 WL 1075991, at *3 (M.D. Fla. 2009). "The FAA and the strong federal policy favoring arbitration, require courts to 'rigorously enforce agreements to arbitrate.'" Fantis v. Flywheel Sports, Inc., No. 18-CV-24934, 2019 WL 1582957, at *1 (S.D. Fla. 2019) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

"Section 2 of the FAA requires the courts to enforce an arbitration provision within a contract unless 'such grounds exist at law or in equity for the revocation of any contract.' Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" Parnell v. CashCall, Inc., 804 F.3d 1142, 1146 (11th Cir. 2015) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 66 (2010)). "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4).

## DISCUSSION

As noted above, Plaintiff argues that the Motion to Compel Arbitration should be denied because: (1) the parties did not enter into an agreement to arbitrate; (2) the Arbitration Agreement is unenforceable as unconscionable; and (3) Defendant TAI is not entitled to submit Plaintiff's FMLA claims against it to arbitration. See Resp. [D.E. 11]. The undersigned addresses each of these arguments in turn.

1. **Whether the parties entered into an agreement to arbitrate**

"The threshold question of whether an arbitration agreement exists at all is simply a matter

of contract." Valencia v. 1300 Ocean Drive, LLC, No. 17-CV-20669, 2017 WL 7733158, at *2 (S.D. Fla. 2017) (internal quotation marks omitted) (quoting Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016)). "If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of the agreement, the Court may conclude as a matter of law that the parties did or did not enter into an arbitration agreement." Valencia, 2017 WL 7733158, at *2 (citing Bazemore, 827 F.3d at 1333). "If the Court finds there is an issue of disputed material fact as to whether the parties entered the agreement, the Court shall proceed to trial on the issue." Valencia, 2017 WL 7733158, at *2 (citing Bazemore, 827 F.3d at 1333). State law governs the inquiry. Valencia, 2017 WL 7733158, at *2 (citing Larsen v. Citibank FSB, 871 F.3d 1295, 1303 (11th Cir. 2017)).

Plaintiff argues that no agreement to arbitrate exists between the parties because there was no meeting of the minds given Plaintiff's purported inability to read, write, or speak English. See Resp. [D.E. 11 at 3]. In support of his argument, Plaintiff has filed a declaration averring:

- ➢ When I applied to work for Defendants, I was given what I thought was a work application. All of these documents were only in English.

- ➢ I was given just a few minutes to review the documents. I did not understand any of the parts written in English because I am unable to read, write, or speak English.

- ➢ Defendants and its employees knew that I am unable read, write, or speak English.

- ➢ Defendants conducted the entire transaction in Spanish but did not explain to me the consequences of signing the Arbitration Agreement, provide a Spanish language translation of the Arbitration Agreement, and did not tell me anything regarding arbitration.

- ➢ Furthermore, Defendants informed me that I would not be permitted to start working until I signed the documents.

- ➢ However, I did not know anything about arbitration, what an arbitration proceeding meant, that I agreed to arbitration, or that my continued

> employment would infer an agreement to arbitrate or waive my right to a jury trial until Defendants presented the Arbitration Agreement along with its Motion to Compel Arbitration.

See Ex. A. to Resp. [D.E. 11-1].

"In Florida, a 'meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract.'" Valencia, 2017 WL 7733158, at *2 (quoting De Beers Centenary AG v. Hasson, 751 F. Supp. 2d 1297, 1302 (S.D. Fla. 2010)). However, it is also a "well-established principle that one who signs a contract is generally bound by the contract." Kendall Imports, LLC v. Diaz, 215 So. 3d 95, 100 (Fla. 3d DCA 2017). The Florida Supreme Court has stated that:

> It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it.

Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347–48 (Fla. 1977). It follows that, "if a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." Sutton v. Crane, 101 So. 2d 823, 825 (Fla. 2d DCA 1958); see also Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton, 467 So. 2d 311, 313 (Fla. 5th DCA 1985) ("Benton") ("Persons not capable of reading English, as well as those who are, are free to elect to bind themselves to contract terms they sign without reading.").

Benton is instructive here. At issue in Benton was whether the parties had entered into a valid agreement to arbitrate because the plaintiff had signed the arbitration agreement without

6

reading it due to her inability to understand English. Benton, 467 So. 2d at 312. The plaintiff in Benton sought to invalidate the arbitration agreement by alleging that:

> she was unable to read because her education and national origin never gave her training in reading English and that the [defendant] knew that fact and that the agreement was not read or explained to [her].

Id. at 313 (footnote omitted). The Benton court held that the facts alleged by the plaintiff did not invalidate the agreement and did not "constitute a sufficient legal defense to it." Id. In reaching its decision, the Benton court relied on the following legal principles: "As a matter of law a party who voluntarily executes a document knowing it is intended to establish contractual relationships between the parties but without reading it is bound by its terms in the absence of coercion, duress, fraud in the inducement or some other independent ground justifying rescission"; and "The burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it." Id. at 312–13. In finding that the arbitration agreement was not invalid, the Benton court reasoned that "[t]here was no allegation or testimony whatsoever that the [defendants] prevented [the plaintiff] from reading the contract or induced her to refrain from reading it or in any way prevented her from reading it or having it read to her by a reliable person of her choice." Id. at 313.

Here, as in Benton, Plaintiff does not allege that Defendants prevented him from reading the Arbitration Agreement, induced him to refrain from reading it, or in any way prevented him from reading it or having it read to him by a reliable person of his choice. Plaintiff merely claims that: he did not understand the Arbitration Agreement because it was in English; Defendants were aware that he did not understand English; Defendants did not explain the consequences of signing the Arbitration Agreement to him or provide him with a translated version of the Arbitration Agreement; and he was not permitted to begin working for Defendants until he signed the

Arbitration Agreement. See Ex. A. to Resp. [D.E. 11-1]. This is insufficient to invalidate the agreement to arbitrate that Plaintiff signed. Benton, 467 So. 2d at 313.; Allied Van Lines, Inc., 351 So. 2d at 347–48; Sutton, 101 So. 2d at 825.

### 2. **Whether the Arbitration Agreement is unconscionable**

"The parties to a contract may agree to have an arbitrator, rather than a court, decide issues of arbitrability, including whether an arbitration agreement is valid and/or enforceable." Ytech 180 Units Miami Beach Investments LLC v. Certain Underwriters at Lloyd's, London, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019) (citing Rent-A-Ctr., W., Inc., 561 U.S. at 68–70). These agreements are known as delegation clauses or provisions. Id.; In re Motransa S.A., No. 19-CV-25026, 2020 WL 4251147, at *2 (S.D. Fla. 2020).

"The Supreme Court has upheld these so-called 'delegation provisions' as valid and explained that they are severable from the underlying agreement to arbitrate." Parnell, 804 F.3d at 1146 (citations omitted). "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole,* the federal courts may not review his claim because it has been committed to the power of the arbitrator. Instead, the plaintiff must 'challenge[ ] the delegation provision *specifically.*'" Parnell, 804 F.3d at 1146 (emphasis and alteration in original) (quoting Rent-A-Ctr., W., Inc., 561 U.S. at 71). Accordingly, "[w]hen a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration." Ytech 180 Units Miami Beach Investments LLC, London, 359 F. Supp. 3d at 1264 (citing Rent-A-Ctr., W., Inc., 561 U.S. at 68–70).

The Arbitration Agreement contains the following delegation clause (hereafter, "Delegation Clause"):

8

> The arbitrator chosen by you and the Company in accordance with the AAA Arbitration Rules and Procedures will be the sole and exclusive judge of the proper interpretation of any agreement between the parties as well as the rules and procedures of the arbitration process including arbitrability of claims.

See Ex. A. to Mot. to Compel Arbitration [D.E. 10-1 at 14]. The language of the Delegation Clause and its incorporation of the American Arbitration Association's ("AAA") Rules is "clear and unmistakable evidence of the parties' intent to have threshold arbitrability questions resolved by the arbitrator[,]" including questions concerning the existence, scope, validity, and enforceability of the Arbitration Agreement. SBMH Grp. DMCC v. Noadiam USA, LLC, 297 F. Supp. 3d 1321, 1324 (S.D. Fla. 2017) (citing Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332–33 (11th Cir. 2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); see also 24 Go Wireless, Inc. v. AT & T Mobility II, LLC, No. 11-CV-20930, 2011 WL 2607099, at *2 (S.D. Fla. 2011) (finding that incorporation of the AAA's Rules in the arbitration agreement evinced a clear and unmistakable agreement between the parties to submit questions concerning the validity and the enforceability of the agreement to arbitration); JPay, Inc. v. Kobel, 904 F.3d 923, 938 (11th Cir. 2018) ("The incorporation of the AAA . . . rules are enough because they grant the arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'") (quoting Terminix Int'l Co., LP, 432 F.3d at 1332).

Because Plaintiff challenges the Arbitration Agreement as a whole and fails to specifically challenge to the Delegation Clause, the undersigned must find the Delegation Clause valid. Parnell, 804 F.3d at 1146–47 ("[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision 'as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'") (quoting

Rent-A-Ctr., W., Inc., 561 U.S. at 72). Therefore, questions concerning the validity and enforceability of the Arbitration Agreement, including the issue of whether it is unconscionable, must be decided by the arbitrator pursuant to the Delegation Clause.

### 3. **Whether Defendant TAI can compel arbitration of Plaintiff's claims against it**

Because TAI is not a signatory to the Arbitration Agreement, state law governs whether it can invoke the Arbitration Agreement to compel arbitration of Plaintiff's claims against it. See SBMH Grp. DMCC v. Noadiam USA, LLC, 297 F. Supp. 3d 1321, 1325 (S.D. Fla. 2017).

"Florida and federal courts have recognized that a non-signatory can compel arbitration by a signatory to an arbitration agreement under the doctrine of equitable estoppel." Citi Cars, Inc. v. Cox Enterprises, Inc., No. 17-CV-22190, 2018 WL 1521770, at *11 (S.D. Fla. 2018) (alterations omitted) (quoting Koechli v. BIP Int'l, Inc., 870 So. 2d 940, 944 (Fla. 1st DCA 2004)). Under Florida law:

> The doctrine of equitable estoppel applies when, *inter alia*, a signatory's claims allege substantially interdependent and concerted misconduct by non-signatories and one or more signatories. Accordingly, the question before the Court is whether Plaintiff alleges substantially intertwined and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract.

Citi Cars, Inc., 2018 WL 1521770, at *11 (internal quotation marks and citations omitted).

In his Complaint, Plaintiff makes the following common allegations against LSF, TAI, and Frankcrum, designating them collectively as Defendants:

- ➤ At all times material hereto, Plaintiff communicated with Defendants regarding his serious medical condition.

- ➤ Defendants had knowledge of Plaintiff's serious medical condition and the reason for Plaintiff's absences and upcoming absence from work.

- ➤ Despite its knowledge of Plaintiff's serious medical condition, Defendants failed to notify Plaintiff of his eligibility status and rights under the FMLA and failed to notify Plaintiff whether his leave was or could be designated as FMLA leave.

10

- ➢ Upon information and belief, Defendants failed to keep posted a notice explaining the provisions of the FMLA and providing information concerning the procedures for filing complaints of FMLA violations with the Wage and Hour Division ("WHD").

- ➢ Upon information and belief, Defendants failed to provide general notice of FMLA rights to its Spanish-speaking employees, including Plaintiff.

- ➢ Instead of informing Plaintiff of his rights under the FMLA, Defendants terminated Plaintiff falsely accusing him of having "abandoned" his job.

- ➢ By failing to notify Plaintiff of his FMLA rights, Defendants interfered with Plaintiff's rights to take leave under the FMLA and denied him the benefits to which he was entitled.

- ➢ Defendants terminated Plaintiff.

- ➢ On or about February 26, 2020, Defendants informed Plaintiff that he had "abandoned" his job and that Plaintiff had been replaced.

- ➢ By terminating Plaintiff, Defendants interfered with Plaintiff's rights to take leave under the FMLA and denied him the benefits to which he was entitled.

See Compl. [D.E. 1].

Based on the foregoing, it is clear that the Complaint alleges "substantially intertwined and concerted misconduct" between TAI and Frankcrum, non-signatories to the Arbitration agreement, and LSF, a signatory to the Arbitration Agreement. Citi Cars, Inc., 2018 WL 1521770, at *11. Therefore, the application of equitable estoppel is warranted, thereby rendering Plaintiff's FMLA claims against TAI subject to arbitration. Id. Moreover, even though Frankcrum did not move to compel arbitration, the action should be stayed in its entirety pending the arbitration proceedings because Plaintiff's claims against TAI, LSF, and Frankcrum are inextricably intertwined. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n.23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending

11

the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS as follows:

1) That the Motion to Compel Arbitration [D.E. 10] be **GRANTED**;

2) That Plaintiff's claims against Defendants be submitted to arbitration; and

3) That this case be **STAYED** in its entirety pending the arbitration proceedings.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 30th day of September, 2020.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Jose E. Martinez
Counsel of Record